**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Bernard WEINTRAUB,
Defendant–Appellant.**

**No. 87–1857.**

United States Court of Appeals,
Fifth Circuit.

April 21, 1989.

---

Benson B. Weintraub, Benedict P. Kuehne, Sonnett, Sale & Kuehne, Miami, Fla., for defendant-appellant.

William D. Sheetz, Asst. U.S. Atty., Marvin Collins, U.S. Atty., Dallas, Tex., for plaintiff-appellee.

Before REAVLEY, WILLIAMS and JONES, Circuit Judges.

JERRE S. WILLIAMS, Circuit Judge:

Appellant, Bernard Weintraub, was convicted of various criminal offenses arising from his involvement in a cocaine distribution conspiracy. He has filed a petition in the nature of habeas corpus under 28 U.S.

C. § 2255 seeking to have his conviction vacated and his sentence set aside. We uphold his conviction. We must set aside the sentence and remand for further proceedings, however, based upon our conclusion that the prosecution improperly withheld favorable evidence that was material to Weintraub's punishment.

## I. Facts and Prior Proceedings

Bernard Weintraub was charged in a five count indictment with conspiracy to possess and distribute cocaine and related substantive offenses. Count I of the indictment alleged twenty overt acts that Weintraub or his co-conspirators committed in furtherance of this conspiracy, recounting the details of eight specific cocaine transactions. Counts II and III alleged that Weintraub distributed five ounces of cocaine to an unindicted co-conspirator, Gregory Brown Emrick, on March 23, 1983, and traveled in interstate commerce to carry on this unlawful activity. Counts IV and V alleged that Weintraub distributed cocaine to Emrick on April 23, 1983, and used the telephone to facilitate this transaction. Weintraub was convicted by a jury in the Northern District of Texas on three counts of the indictment: Count I (the conspiracy charge); Count IV (use of the telephone to facilitate the April 23, 1983 transaction); and Count V (distribution of cocaine on April 23, 1983). He was acquitted on Counts II and III, arising from the alleged March 23, 1983 transaction.

On May 23, 1985, Weintraub was sentenced to fifteen years' imprisonment on Count I, running concurrently with a fifteen-year prison term on Count V and a four-year term on Count IV. He was also fined $75,000. Weintraub did not file a direct appeal.

On September 26, 1985, Weintraub filed a motion to reduce his sentence under Fed. R.Crim.P. 35(b), claiming an unjust disparity between his sentence and the punishment of his co-conspirators. Weintraub also filed a consolidated motion under 28 U.S.C. § 2255 and Fed.R.Crim.P. 35(a), seeking to vacate, set aside, or correct his sentence based on various procedural defects in the sentencing proceedings. Subsequent discovery revealed that Weintraub's trial prosecutor had failed to disclose certain evidence to Weintraub during the course of the trial. Weintraub contends that this information was withheld in violation of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Weintraub amended his § 2255 motion to include this ground, and also sought to have his conviction set aside because of the alleged *Brady* violation.

The district court denied Weintraub's motion for a reduction of sentence under Rule 35(b).[1] The consolidated Rule 35(a)/§ 2255 motion to vacate or correct the sentence was referred to a federal magistrate, who conducted an evidentiary hearing in March, 1987.[2] In October, 1987, the magistrate recommended that the district court deny all requested relief. The magistrate concluded that the prosecution should have revealed certain evidence favorable to Weintraub at trial. The magistrate determined, however, that Weintraub's conviction and sentence should not be set aside because this evidence was not material. The magistrate also recommended that Weintraub's sentence should not be set aside on the basis of procedural violations in Weintraub's sentencing proceeding. The district court adopted the findings and conclusions of the magistrate, and denied all relief. Weintraub now appeals the denial of his 28 U.S.C. § 2255 motion.

---

**1.** Weintraub initially appealed this ruling. The appeal was voluntarily dismissed with the consent of all parties.

**2.** The lower court treated this motion solely as a motion under 28 U.S.C. § 2255. Although the court did not make a ruling on this issue, Weintraub's motion to correct a sentence imposed in an illegal manner under Fed.R.Crim.P. 35(a) was apparently ignored by the lower court be-

cause it was not filed within the 120 day time period set out in Rule 35(a) and 35(b). Weintraub was sentenced on May 23, 1985, and filed his motion on September 26, 1985, six days after the time period had run. On appeal, Weintraub apparently concedes this point, since he appeals only from the lower court's denial of his motion under 28 U.S.C. § 2255.

## II. *Withheld Evidence*

Under *Brady v. Maryland,* the prosecution must disclose to the defendant evidence that is favorable to the accused and "material either to guilt or to punishment." 373 U.S. at 87, 83 S.Ct. at 1196–97. Failure to disclose such evidence violates a defendant's due process right to a fair trial. The withholding of material evidence favorable to the accused may require a new trial or, where the evidence is material only to the punishment, a new sentencing proceeding. *See, e.g., id.* at 88–89, 83 S.Ct. at 1197–98 (withheld evidence material only to punishment); *Lindsey v. King,* 769 F.2d 1034, 1041–43 (5th Cir.1985) (new trial required when withheld evidence cast serious doubt on key witness' identification of capital murder defendant).

It is axiomatic, however, that not every instance of withheld evidence creates a due process violation. "The prosecution is not required to deliver his entire file to defense counsel, but only to disclose evidence favorable to the accused that, if suppressed, would deprive the defendant of a fair trial." *United States v. Bagley,* 473 U.S. 667, 675, 105 S.Ct. 3375, 3380, 87 L.Ed.2d 481 (1985). Our first task, then, is to determine whether a *Brady* due process violation occurred in this case.

### A. The asserted *Brady* violations

Weintraub contends that the prosecution improperly withheld information in the Drug Enforcement Administration's (DEA) investigative reports, known as DEA–6's. These reports contained summaries of statements made by Weintraub's unindicted co-conspirator, Greg Emrick, during the course of the DEA investigation. Weintraub argues that, had this information been properly revealed at trial, he could have effectively impeached Emrick's trial testimony, undermining Emrick's credibility to the extent that the jury would have acquitted Weintraub on all charges.

■ Impeachment material is evidence "favorable to the accused," and as such comes under the *Brady* rule. *Giglio v. United States,* 405 U.S. 150, 154, 92 S.Ct. 763, 766, 31 L.Ed.2d 104 (1972); *United States v. Bagley,* 473 U.S. at 676, 105 S.Ct. at 3380. Some of Weintraub's asserted *Brady* violations, however, do not clearly fall within this category. Weintraub complains that the prosecution did not reveal that some of Emrick's trial testimony was *not* included in the DEA–6 reports. According to Weintraub, the fact that Emrick apparently failed to discuss certain information with the DEA in the course of its pretrial investigation is *Brady* material. We disagree.

The DEA–6 reports are not verbatim accounts of Emrick's pretrial statements. Instead, "the reports are short, concise, summaries of the witnesses' version of the facts as recounted to the agents." *United States v. Merida,* 765 F.2d 1205, 1215 (5th Cir.1985). In Weintraub's case, one of the reports at issue summarized Emrick's statements made in three separate interviews conducted over the course of two and a half months. Thus, the fact that a specific piece of trial testimony is not included in a DEA–6 is not necessarily a reflection on the credibility of the witness, but instead may be the result of an agent's transcription techniques. Taking into account the realities of this summation process, this Court was "not persuaded that any *Brady* -mandated material existed" in a similar case where the accused contended that the prosecution should have revealed that specific trial testimony was not included in a DEA–6. *United States v. Merida,* 765 F.2d at 1216. We conclude that the fact that the DEA–6's did *not* contain certain statements that Emrick made at trial is not *Brady* material that the prosecution was under a duty to disclose.

■ Weintraub also complains that the prosecution withheld evidence that *was* included in the DEA–6 reports and was contradicted by Emrick's trial testimony. The first serious inconsistency involves the amount of cocaine that Weintraub was responsible for distributing. During the course of its pretrial investigation, Emrick told the DEA that he had been purchasing three to five ounces of cocaine a week from Andrew Glomb, Weintraub's partner in supplying cocaine to the Dallas area, for

two and a half to three years.[3] This statement was incorporated in a DEA-6. At trial, however, Emrick testified that he had purchased *six to fourteen ounces* a week from Glomb and Weintraub, totalling 50 to 70 pounds in a three year period.[4]

Emrick also contradicted a pretrial statement in his trial testimony regarding a specific cocaine transaction. Emrick testified at trial that he traveled from Dallas, Texas to Miami, Florida on December 31, 1982, arriving in Miami at 6:14 p.m. Weintraub met him at the airport, and they drove to the Airport Marriott in Miami. Emrick purchased cocaine from Weintraub in the parking lot at the Airport Marriott. According to Emrick, this entire transaction took, at most, thirty minutes, and Weintraub departed from the hotel some time between 6:30 and 6:45.

In a pretrial statement to DEA investigators, however, Emrick said that he had arrived in Miami at *9:00 p.m.* on December 31. This time variation is critical. Weintraub had a copy of an airline ticket, introduced in evidence at the § 2255 hearing, which establishes that he flew from Miami to Las Vegas on December 31, 1982, departing at 7:01 p.m. Thus, he could not have met Emrick at the Miami Airport at 9:00 p.m., as Emrick originally stated to DEA investigators. Weintraub was not able to raise this inconsistency at trial, however, because the prosecution never disclosed the fact that Emrick had originally given the 9:00 p.m. time.[5]

The magistrate who ruled on Weintraub's § 2255 motion concluded that this impeachment evidence should have been revealed to Weintraub at trial. The government concedes this point on appeal. The sole issue for this Court, then, is whether the withheld information was material, so as to require reversal of Weintraub's conviction or sentence.

## B. Materiality of Withheld Evidence to Weintraub's Conviction

The Supreme Court has determined that withheld evidence favorable to the accused is material "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *United States v. Bagley*, 473 U.S. at 682, 105 S.Ct. at 3383 (opinion of Blackmun, J.); *Id.*, 473 U.S. at 685, 105 S.Ct. at 3385 (opinion of White, J.); *Pennsylvania v. Ritchie*, 480 U.S. 39, 56–59, 107 S.Ct. 989, 1001–02, 94 L.Ed.2d 40 (1987) (majority opinion).[6] Applying this

---

**3.** Andrew Glomb disappeared after his release on bail, and thus did not testify at Weintraub's trial.

**4.** The difference between these figures cannot be explained by the simple fact that Emrick first stated that he purchased three to five ounces a week *from Glomb*, and later testified that he purchased six to fourteen ounces a week from Glomb *and Weintraub*. Emrick's initial statement was made to DEA investigators before he revealed that Weintraub was involved in the conspiracy; this explains why Weintraub was not mentioned. Emrick later testified, along with the other Dallas purchasers, that Weintraub and Glomb were partners in supplying cocaine to the Dallas area. While Glomb often acted as a "front man," the two were working together during the entire relevant period. Indeed, much of the prosecution's case rested on establishing the fact that Weintraub and Glomb together were a single supply source for cocaine.

In a second DEA-6, reporting information discussed after Emrick had fingered Weintraub as Glomb's partner and his supplier, Emrick revealed the names of his regular purchasers of cocaine and the amount of their weekly purchases. According to Emrick, he sold less than two ounces of cocaine a week. This figure is more consistent with Emrick's original pretrial statement that he purchased 3–5 ounces a week from Glomb and Weintraub.

**5.** The ticket showing Weintraub's 7:01 departure time was released to the prosecution prior to trial pursuant to a discovery order. The prosecution was therefore aware, or should have been aware, of the important inconsistency between Emrick's statement in the DEA-6 report and Weintraub's plane ticket.

**6.** The *Bagley* materiality standard applies in every case, regardless of whether the defendant made a specific pretrial request for the disclosure of *Brady* material. 473 U.S. at 682, 105 S.Ct. at 3383. The fact that the defendant made a specific request is, however, one factor a reviewing court may consider in assessing the materiality of the withheld evidence. In particular, "the reviewing court may consider directly any adverse effect that the prosecutor's failure

test, the magistrate concluded that the outcome of Weintraub's trial would not have been different if the government had properly given Weintraub the impeachment material before trial. We agree.

■ Weintraub contends that Emrick's testimony was crucial to his conviction, to the extent that the previously undisclosed evidence casting doubt on Emrick's credibility would necessarily cast doubt on Weintraub's entire conviction. When evaluating this claim, we must consider the nature of the impeachment evidence improperly withheld and the additional evidence of the defendant's guilt independent of the disputed testimony. Courts have found, for example, that impeachment evidence improperly withheld was not material where the testimony of the witness who might have been impeached was strongly corroborated by additional evidence supporting a guilty verdict. *United States v. Risken*, 788 F.2d 1361, 1375 (8th Cir.), *cert. denied*, 479 U.S. 923, 107 S.Ct. 329, 93 L.Ed.2d 302 (1986). In contrast, where the withheld evidence would seriously undermine the testimony of a key witness on an essential issue or there is no strong corroboration, the withheld evidence has been found to be material. *See McDowell v. Dixon*, 858 F.2d 945 (4th Cir.1988), *cert. denied*, — U.S. —, 109 S.Ct. 1172, 103 L.Ed.2d 230 (1989) (Victim gave only direct evidence identifying the defendant, a black man, as her assailant, and the prosecution withheld the fact that she had originally stated that the culprit was white); *Lindsey v. King*, 769 F.2d at 1042 (Prosecution withheld original statement by an eyewitness that he did not see an assailant's face and thus could not identify the culprit. At trial, the same eyewitness positively identified the defendant).

In the present case, the record and transcript from Weintraub's trial belie his claim

that the withheld evidence was reasonably likely to change the outcome of his trial. Instead, the corroborating evidence of his guilt and the collateral nature of the withheld impeachment evidence compels the conclusion that this evidence was not material to Weintraub's conviction.

We turn first to Weintraub's conviction on the conspiracy charge. To obtain a conviction for criminal conspiracy, the government must prove: (1) that the defendant knowingly joined a group of two or more people working toward an illegal purpose; and (2) that at least one member of the group committed an overt act in furtherance of the agreement. *United States v. Davis*, 810 F.2d 474, 477 (5th Cir.1987); *United States v. Wheeler*, 802 F.2d 778, 782 (5th Cir.1986), *cert. denied sub nom. Strauder v. United States*, 480 U.S. 908, 107 S.Ct. 1354, 94 L.Ed.2d 524 (1987). Weintraub's indictment alleged twenty overt acts taken by Weintraub and his co-conspirators to further the conspiracy to possess and distribute cocaine. Thus, the veracity of Emrick's trial testimony regarding the details of just one cocaine transaction on December 31, 1982 was not essential to establishing Weintraub's guilt on the conspiracy charges.[7] *Cf. McDowell*, 858 F.2d at 949–951; *Lindsey*, 769 F.2d at 1042 (disputed testimony regarding eyewitnesses' identification of the defendant was absolutely critical in determining guilt or innocence).

We also note that there was substantial independent evidence supporting the conclusion that Weintraub was involved in a conspiracy to distribute cocaine, apart from Greg Emrick's trial testimony. In addition to Emrick, two other unindicted co-conspirators testified for the prosecution at Weintraub's trial. Both men testified that Weintraub, working together with his partner Andrew Glomb, supplied cocaine to

to respond might have had on the preparation or presentation of the defendant's case." *Id.* at 683, 105 S.Ct. at 3384. Weintraub did make a pretrial motion for disclosure of any *Brady* material.

**7.** It is for this reason that we reject Weintraub's characterization of the withheld evidence regarding the December 31, 1982 transaction as

"exculpatory." The withheld evidence might cast reasonable doubt on Weintraub's participation in the New Year's Eve transaction. But this transaction does not form the basis of any count in Weintraub's indictment. Thus, the withheld evidence would not exculpate Weintraub of any crime for which he was convicted.

them, sometimes directly and sometimes through Greg Emrick, for distribution in the Dallas area.

One witness, Howard Berland, admitted that he had not personally met Weintraub, but testified that he knew of Weintraub's involvement as the supplier of cocaine through his co-conspirators Emrick, Glomb, and Philip Levine. Berland often provided the money up front for cocaine purchases for himself and Levine. Berland testified that in June, 1983, he obtained a $6,000 cashier's check made out to Bernard Weintraub as payment for three ounces of cocaine. This check was introduced into evidence, and directly corresponded to one overt act listed in Weintraub's conspiracy indictment.[8]

A second co-conspirator, Philip Levine, testified more fully as to Weintraub's involvement in the cocaine distribution conspiracy. Levine testified that he had met Weintraub in August, 1982, in Dallas through Andrew Glomb, who told Levine that Weintraub was Glomb's partner in cocaine distribution. Levine further stated that on various dates in 1983, he ordered cocaine for himself and Berland from Weintraub and Glomb, with Emrick sometimes serving as a middleman. Levine testified that on June 23, 1983, he and Emrick picked up Weintraub at the Dallas/Fort Worth Airport. According to Levine, they drove to the Dallas Apparel Mart, where Levine was employed. At this time, Levine personally gave Weintraub the same $6,000 cashier's check that Berland had made out in exchange for three ounces of cocaine. Levine's testimony also directly corresponded to overt acts listed in the conspiracy indictment.

8. Weintraub's defense counsel attempted to offer an alternative, legitimate purpose for this cashier's check, asking Berland and other witnesses whether the check might have been made out to Weintraub as a deposit for a Mercedes that Glomb was going to purchase during a trip overseas. Each witness flatly denied this proffered explanation, and the jury was entitled to reject this alternative and accept the testimony of the prosecution witnesses who stated that the money was used to purchase cocaine.

We have summarized only part of Levine and Berland's testimony; both witnesses recounted other instances of buying cocaine from Weintraub and Glomb. Their testimony was consistent with Greg Emrick's testimony regarding several occasions when Weintraub supplied cocaine to the Dallas purchasers. When the trial transcript is considered as a whole, it is clear that there was sufficient evidence to find that Weintraub knowingly participated in a scheme to distribute cocaine and that overt acts were committed in furtherance of this scheme, even if Emrick's testimony regarding the details of the alleged December 31, 1982 transaction and the total amount of cocaine distributed had been thoroughly discredited. Given the testimony of Levine and Berland, we cannot say that the withheld impeachment evidence that casts doubt on a small portion of Emrick's trial testimony also casts serious doubt on Weintraub's conviction for conspiracy to distribute cocaine.

Weintraub's conviction on Counts IV and V, arising from the delivery of cocaine to Emrick in Dallas on April 24, 1983, is a closer question. Levine and Berland were not involved in this incident, and thus did not testify as to the April 24 transaction. But the prosecution did introduce documentary evidence which corroborated Emrick's testimony that Weintraub flew into Dallas and stayed at the Holiday Inn in Irving, Texas on that date. The hotel telephone records confirm that Weintraub called Emrick from the hotel. In addition, Weintraub's own witness, Susan Morency, testified that she and Weintraub stayed at the Holiday Inn on that date and met with Greg Emrick.[9]

9. Ms. Morency claims that Weintraub never left her side during their meeting with Emrick, and never discussed or conducted a cocaine transaction while the three were together. She also testified that Weintraub did not separate from her, even to go to the bathroom, during the time that another cocaine transaction allegedly took place. This latter testimony was contradicted by another witness. The jury was entitled to disbelieve Ms. Morency's testimony, especially considering her interest, as Weintraub's former girlfriend who was financially supported by him, in the outcome of the trial.

The jury could reasonably infer from this evidence, coupled with other evidence of Weintraub and Emrick's extensive involvement in cocaine distribution, that Weintraub delivered cocaine to Emrick on April 24, 1983 and used the phone to facilitate this transaction. The withheld impeachment evidence regarding another transaction and the total amount of cocaine distributed does not cast serious doubt upon this conclusion.

In support of his argument that the withheld impeachment evidence was material to his conviction, Weintraub emphasizes that the jury acquitted him on Counts II and III of the indictment, arising from Weintraub's alleged distribution of cocaine to Emrick on March 24, 1983. These two counts were the only counts in the indictment supported solely by Emrick's trial testimony, without any documentary evidence or independent corroborating testimony. Weintraub contends that this acquittal establishes that Emrick's trial testimony was absolutely crucial to his conviction—where the jury disbelieved Emrick, they acquitted Weintraub. Thus, Weintraub argues, the withheld impeachment evidence must be considered material.

We find, however, that this argument cuts the other way. Weintraub's acquittal on Counts II and III supports our conclusion that the withheld impeachment evidence was not material to Weintraub's conviction. The acquittals suggest that the jury *already* doubted Emrick's credibility, and so was unwilling to convict Weintraub solely on the basis Emrick's testimony without corroborating evidence.[10] The withheld evidence, with the potential to impeach Emrick's trial testimony on two additional matters, could therefore be considered cumulative, and would not be material to Weintraub's conviction.

### C. Materiality of Withheld Evidence to Weintraub's Punishment

■ The lower court also concluded that the withheld evidence was not material to Weintraub's sentence. Weintraub's presentence investigation report (PSI) informed the sentencing court that Weintraub was responsible for distributing 50 to 70 pounds of cocaine. This information came solely from Emrick's trial testimony; it mirrored the very evidence that would have been subject to impeachment if the prosecution had properly revealed Emrick's prior inconsistent statement suggesting that Weintraub distributed a much smaller amount.[11] The magistrate nevertheless determined that the withheld evidence was not material to Weintraub's sentence, concluding that "the [sentencing] court did not consider the purported erroneous statements in the presentence investigation re-

10. Indeed, Weintraub's counsel succeeded in planting some doubts as to Emrick's credibility in the course of his cross-examination of Emrick. The jury learned, for example, that Emrick had worked as an informant for the FBI for the past eight years. During that time he was required to abstain from illegal activities. But Emrick was under investigation for criminal activities four times while he served as an informant. Three incidents involved gambling and writing hot checks. In addition, Emrick was indicted in 1980 for possession of cocaine. Each time, the FBI interceded on Emrick's behalf, and he was able to escape trial and criminal penalties. Cross-examination also revealed that the government agreed to join a Rule 35 motion for the reduction of Emrick's ten-year sentence arising from his activities in the present conspiracy in return for Emrick's cooperation in the investigation of Weintraub.

11. Emrick testified as follows at trial:

Q. [By the prosecutor] Did you do any business with Mr. Weintraub and Mr. Glomb after that?
A. Yes, over the next several years I made numerous purchases of cocaine.
Q. How often?
A. Weekly.
Q. And in what quantity are we talking about?
A. Six to fourteen ounces a week.
Q. How much money did you pay Mr. Weintraub in total an estimate for cocaine?
A. Approximately a million and a half dollars over a period of three years.
Q. And how much cocaine did this man here deliver to you over that period of time?
A. Approximately fifty to seventy pounds.
Q. Fifty to seventy pounds of cocaine?
A. Yes, sir.
This was the only evidence introduced at trial regarding the amount of cocaine Weintraub had distributed.

port, and did not base the sentence imposed upon such statements." We find this conclusion clearly erroneous.

Indeed, our review of the record reveals that the sentencing court did consider Emrick's trial testimony regarding the amount of cocaine Weintraub distributed when imposing Weintraub's sentence. It is true, as the magistrate and government note, that the lower court responded to some of Weintraub's objections to the presentence investigation report by disclaiming reliance on the contested information. Thus, the court ordered that an unsupported statement that Weintraub was "considered by agents to be the source of several other cocaine distributors in the Dallas, Texas area" be deleted from the sentencing report. The court also stated that it found nothing in the record to substantiate a claim in the PSI that Weintraub distributed "pure cocaine."

When it came to Weintraub's objections regarding the statement that Weintraub distributed a total of 50 to 70 pounds of cocaine, however, the court did not disclaim reliance on this information. Instead, after a recess called to review the transcript of the trial, the court determined that this information in the presentence investigation report was supported by Greg Emrick's trial testimony. The court ordered that the original sentence in the PSI be deleted because it stated that Weintraub distributed "50 to 70 pounds of *pure* cocaine" (emphasis added). But in its place the court ordered that Emrick's trial testimony regarding the amount of cocaine

Weintraub distributed be attached to the sentencing report.

Thus, the very evidence that the parties agree would have been subject to impeachment if the government had properly revealed Emrick's pretrial statements was incorporated in Weintraub's sentencing report. Moreover, the transcript of the sentencing proceeding reflects that the parties and the court were aware that the amount of cocaine Weintraub distributed would have an impact on the length and nature of his punishment. Given these facts, the withheld impeachment evidence tended to undermine Emrick's trial testimony regarding the amount of cocaine Weintraub distributed. Yet that testimony as to amount was the only evidence known to the defendant and the judge at the time of sentencing. We conclude that the withheld impeachment evidence was material to Weintraub's punishment. We vacate Weintraub's sentence and remand for new sentencing proceedings.[12]

### III. *Procedural Claims*

Weintraub also challenges his sentence on the basis of various procedural violations in his sentencing proceeding. First, he contends that the court violated Fed.R.Crim.P. 32(a)(1)(A) because the sentencing court failed to inquire personally whether Weintraub and his counsel had the opportunity to read the presentence investigation report.[13] Weintraub also contests the manner in which the district court responded to his objections to the PSI statements, arguing that the court failed to

---

12. It is within the discretion of the district court to determine if an evidentiary hearing must be held for Weintraub's new sentence to be imposed. *See United States v. Fatico,* 603 F.2d 1053, 1057 n. 9 (2d Cir.1979), *cert. denied,* 444 U.S. 1073, 100 S.Ct. 1018, 62 L.Ed.2d 755 (1980). The court may simply choose to resentence Weintraub without reliance on Emrick's trial testimony regarding the amount of cocaine Weintraub distributed. In doing so, the court must comply with the requirements of Fed.R. Crim.P. 32(c)(3)(D). *See infra* note 14. The court will also have to direct that the contested trial testimony be deleted from Weintraub's prison and parole records. *See* Advisory Com-

mittee Notes, Rule 32(c)(3)(D). If, however, the court relies on Emrick's trial testimony for resentencing, Weintraub must be given the opportunity to use the previously withheld impeachment evidence to refute the conclusion that Weintraub distributed 50–70 pounds of cocaine.

13. Fed.R.Crim.P. 32(a)(1)(A), applicable to offenses committed prior to November 1, 1987, provided:

Before imposing sentence the court shall determine that the defendant and the defendant's counsel have had the opportunity to read and discuss the presentence investigation report. . . .

comply with Fed.R.Crim.P. 32(c)(3)(D).[14] The magistrate rejected these claims.

We find that Weintraub is not entitled to § 2255 relief for the alleged violations of Rule 32. 28 U.S.C. § 2255 does not provide recourse for every procedural error that may occur at trial or sentencing. Instead, "[i]t is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised on direct appeal and, would, if condoned, result in a complete miscarriage of justice." *United States v. Capua,* 656 F.2d 1033, 1037 (5th Cir. Unit A 1981).

We have recently held that violations of Rule 32 that can be raised on direct appeal or through a Rule 35(a) motion to correct a sentence are not cognizable for the first time in a 28 U.S.C. § 2255 proceeding. *United States v. Prince,* 868 F.2d 1379, 1386 (5th Cir.1989); *United States v. Smith,* 844 F.2d 203, 206 (5th Cir.1988). Weintraub's procedural claims clearly fall within this category. *Prince,* 868 F.2d at 1386; *Smith,* 844 F.2d at 206.[15] We do not address the merits of Weintraub's Rule 32 claims because we find that they do not fall within the narrow ambit of § 2255 review.

### IV. *Conclusion*

Based on the independent evidence of Weintraub's guilt, we conclude that the information in the DEA–6 reports that the prosecution improperly withheld was not material to Weintraub's conviction on cocaine distribution charges. The withheld evidence was, however, material to Wein-

traub's sentence. Indeed, the sentencing court ordered that the very testimony that might have been impeached be incorporated into Weintraub's sentencing report. Accordingly, we must vacate Weintraub's sentence and remand for further proceedings consistent with this opinion.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

14. Fed.R.Crim.P. 32(c)(3)(D), applicable to offenses committed prior to November 1, 1987, provided:

> If the comments of the defendant and the defendant's counsel or testimony or other information introduced by them allege any factual inaccuracy in the presentence investigation report or the summary of the report or part thereof, the court shall, as to each matter controverted, make (i) a finding as to the allegation, or (ii) a determination that no such finding is necessary because the matter controverted will not be taken into account in sentencing. A written record of such findings and determinations shall be appended to and accompany any copy of the presentence investigation report thereafter made available to

the Bureau of Prisons or the Parole Commission.

15. There is no doubt that Weintraub could have raised his various claims based on alleged violations of Rule 32 by direct appeal or in a Rule 35(a) motion. Indeed, Weintraub attempted to do so, but his Rule 35(a) motion was six days late. *See supra* note 2. *Cf. United States v. Gattas,* 862 F.2d 1432, 1434 n. 4 (10th Cir.1988) (allowing claim for a violation of Rule 32(c)(3)(D) to be raised in a § 2255 proceeding where the violation "was not reasonably discoverable by petitioner until long after the time for a direct appeal or a Rule 35 motion had expired.")