# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
February 12, 2021

Lyle W. Cayce
Clerk

No. 20-10218

UNITED STATES OF AMERICA,

*Plaintiff—Appellee*,

*versus*

JAIME MEZA,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:19-cr-57-1

Before HAYNES, HIGGINSON, and OLDHAM, *Circuit Judges*.
PER CURIAM:*

Appellant's Petition for Panel Rehearing is DENIED. The prior opinion, *United States v. Meza*, --- F. App'x ---, 2021 WL 235771 (5th Cir. Jan. 22, 2021), is withdrawn, and the following opinion is substituted:

Jaime Meza pleaded guilty to one count of possession, sale, and disposal of a stolen firearm in violation of 18 U.S.C. § 922(j). The district

---

* Pursuant to 5TH CIRCUIT RULE 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIRCUIT RULE 47.5.4.

No. 20-10218

court sentenced Meza to the statutory maximum of 120 months. Meza challenges the sentence because he says the district court improperly relied on a confidential source. We disagree and affirm.[1]

## I.

Meza and Ramiro Diaz stole two firearms, six loaded magazines, and some medical equipment from an FBI agent's Chevy Impala at the Eastbridge apartment complex in Dallas, Texas. The next morning, the agent reported the theft. The FBI assigned Special Agent Taylor Page to the case.

During his investigation, Special Agent Page identified one individual whom Meza contacted after the burglary. That individual agreed to be a government informant under the condition of anonymity. The "confidential source"—or CS—testified that Meza contacted him/her, showed him/her the firearms and medical equipment, and said he planned to sell the firearms using his cell phone.

A few weeks later, officers from the Dallas Police Department found Meza in a stolen vehicle. The officers arrested Meza and discovered, via a routine records check, that Meza had been arrested several times for burglarizing vehicles in and around Eastbridge. They promptly contacted Special Agent Page, who then contacted the CS. The CS confirmed that Meza was involved in burglaries near Eastbridge. The CS also described the Colt rifle and Glock pistol Meza had shown him/her. Those descriptions matched the stolen firearms. And though the CS said he/she did not know the name of Meza's buyer, he/she did know the buyer was a Hispanic male whose last name started with a "G" and who drove a black Jeep.

---

[1] Judge Haynes concurs in the judgment and in Sections I, II.C., III., and IV. of the opinion only.

No. 20-10218

Special Agent Page used the CS's testimony to find Jose Guzman, who drove a black Jeep and resided in Dallas. He interviewed Guzman twice. During the first "knock and talk" interview, Special Agent Page showed Guzman pictures of Meza and Diaz. Guzman said he didn't know Diaz but did know Meza—whom he referred to as "Trouble." Special Agent Page also asked Guzman about the firearms. Guzman said Meza sold him the stolen Colt Model M4LE and Glock Model 22 for $600. Guzman gave the FBI Task Force Officers permission to retrieve the Colt from under his bed, and he handed over the Glock (which he had already sold) later that day.

During the second interview—which occurred only five hours after the first—Guzman waived his *Miranda* rights and provided additional information about his relationship with Meza. Guzman admitted he often purchased items like power tools and car stereos from Meza. He also reiterated that on May 24—the day after the theft—he bought the Colt, the Glock, and six loaded magazines for $600. Guzman said he and Meza negotiated that transaction via text message. Guzman was later charged as a co-conspirator in the matter for serving as Meza's "fence"—the middleman between Meza (the thief) and the eventual buyer of the stolen goods.

Meza pleaded guilty to one count of possession, sale, and disposal of a stolen firearm in violation of 18 U.S.C. § 922(j). He did not accept a plea agreement. The resulting PSR assigned Meza a base offense level of 20. *See* U.S.S.G. § 2K2.1(a)(4)(B). He also received the following adjustments: a two-level increase because the firearms were stolen, *id.* § 2K2.1(b)(4)(A); a four-level increase because he engaged in the trafficking of firearms, *id.* § 2K2.1(b)(5); a four-level increase because he used or possessed the firearms in connection with another felony offense, *id.* § 2K2.1(b)(6)(B); and a three-level reduction for acceptance of responsibility, *id.* § 3E1.1(a), (b). The resulting total offense level was 27. Meza had a criminal history score of 16, which established a Criminal History Category of VI. The Guidelines

recommended a sentence of 130 to 162 months. But based on the statutory maximum, the Guidelines term was reduced to 120 months.

Meza objected to both four-level enhancements. He argued the § 2K2.1(b)(5) enhancement was impermissibly based on the CS's hearsay statements and other sources of evidence that the PSR inadequately described. And he argued the § 2K2.1(b)(6)(B) enhancement was inapplicable because the evidence was insufficient to show Meza participated in the burglary.

As to Meza's first objection, the Government responded that the circumstantial evidence—including text messages and photos sent to his fence—showed Meza knew Guzman would sell the firearms illegally after purchasing them from Meza. As to the second objection, the Government responded that additional circumstantial evidence—the corroborated witness testimonies and Meza's criminal history of burglarizing cars—showed Meza did participate in the burglary. The probation officer agreed. The addendum to the PSR credited the CS's testimony, as well as the texts between Meza and Guzman, the evidence of Meza's earlier arrests for burglaries at the same apartment complex, and Meza's responsibility for co-conspirator Diaz's actions. The district court adopted the PSR without change.

At sentencing, Meza reiterated his objections to the enhancements. The district court asked to hear from Special Agent Page. Special Agent Page testified about his conversations with Guzman, who explained his role in reselling the stolen goods he bought from Meza. Special Agent Page testified that he also interviewed the CS, an individual who stated he/she had firsthand conversations with Meza, said he/she observed Meza's activity, and provided the details Special Agent Page used to track down Guzman. The CS said he/she "knew Mr. Meza to be someone that would go pull on

door handles[,] basically burglarize vehicles" near Eastbridge. As far as Special Agent Page knew, the CS had not worked as an FBI informant before. And though Special Agent Page believed the CS had a criminal history, he said he couldn't recall the offenses.

During cross-examination, Meza's attorney "request[ed] as *Brady* information the prior criminal history of any witness, confidential or otherwise, that the government [wa]s relying on." The attorney explained his contention that the Government must disclose that information because it was material to sentencing. The Government averred that it did "not violate[] any *Brady* obligations" because "*Brady* is a trial right . . . [and] Mr. Meza has pled guilty." The district court immediately denied the *Brady* request.

Near the close of argument, Meza's attorney asked the district court to disregard the CS's testimony because the CS had never served as an FBI informant in the past, may have a criminal history of which Meza was unaware, and made statements that were allegedly uncorroborated. In response, the Government offered to disclose to the court *ex parte* the relationship between the CS and the fence. The district court said there was "no need to." Ultimately, the district court denied Meza's *Brady* request. It stated, "I think the presentence report, the addendum, the agent's testimony and what the government has had to say all add up to more than enough evidence that [Meza] was not only at the burglary, but that he also trafficked the arms." The district court accepted the PSR's enhancements and sentence recommendation.

Before sentencing Meza, the district court addressed the seriousness of the offense. Addressing defense counsel, it said, "You know, I don't agree with you that this is a little crime or not that serious. I think it's very serious, particularly with his prior convictions, which are replete with burglary of

No. 20-10218

vehicles." The district court said Meza's criminal history was "another piece of evidence that adds to the evidence that we already have by the confidential informant[] and the . . . text records, that he was certainly involved in the front end of this burglary of a vehicle, and that is in burglarizing the vehicle and then in trafficking the [firearms]." "So what should he get?" the district court rhetorically asked. It continued:

> Well, 120 months is what he should get, because, you know, that's the guidelines range. . . . And I think I would—well, I'm sure I would give that to him anyway, regardless of my objections . . . . Even if I granted the objections on the burglary and on the trafficking, I would still give him 120 months, because with all those burglaries, he deserves that. He certainly deserves that.

In conclusion, the district court said, "I would give it to him anyway under 3553." The district court imposed a statutory-maximum sentence of 120 months in prison, a three-year term of supervised release, no fine, no restitution, and a $100 mandatory special assessment. Meza timely appealed.

## II.

Meza first argues that the district court improperly considered the CS's testimony. The district court has "wide discretion in the kind and source of information it considers" at sentencing. *United States v. Young*, 981 F.2d 180, 185 (5th Cir. 1992) (citation and alteration omitted). At sentencing—unlike at trial—district courts are not limited to information admissible under the Federal Rules of Evidence, "provided that the information has sufficient indicia of reliability to support its probable accuracy." U.S.S.G. § 6A1.3(a). The comment following Guideline 6A1.3 says sentencing courts can consider "[o]ut-of-court declarations by an unidentified informant . . . where there is good cause for non-disclosure of the informant's identity and there is sufficient corroboration by other

means." And we have recognized that "[e]ven *uncorroborated* hearsay evidence may be sufficiently reliable." *United States v. Gaytan*, 74 F.3d 545, 558 (5th Cir. 1996) (emphasis added). "Obviously, the district court has significant discretion in evaluating reliability." *Young*, 981 F.2d at 185. So our "standard for affirming a district court's factual finding is low: Where a factual finding is plausible in light of the record as a whole, it is not clearly erroneous." *United States v. Stubblefield*, 942 F.3d 666, 670 (5th Cir. 2019) (per curiam) (citation omitted); *accord United States v. Malone*, 828 F.3d 331, 337 (5th Cir. 2016) (requiring the evidence be "reasonably reliable" and stating that the standard is "not intended to be onerous" (quotation omitted)). It is Meza's burden to prove that the district court abused its discretion in its factfinding. *See Young*, 981 F.2d at 185 (holding that when a district court relies on information from the PSR, "[t]he defendant bears the burden of demonstrating that information the district court relied on in sentencing is materially untrue" (citation omitted)).

We first hold that the district court did not abuse its wide discretion by considering the CS's testimony in applying the Guidelines' firearms-trafficking enhancement. Then we hold the same with respect to the Guidelines' felony-offense enhancement. Finally we hold any error would be harmless.

## A.

We begin with § 2K2.1(b)(5)—or the "firearms-trafficking enhancement." It authorizes a four-level enhancement "[i]f the defendant engaged in the trafficking of firearms." U.S.S.G. § 2K2.1(b)(5). The firearms-trafficking enhancement applies when the defendant (i) transfers two or more firearms to another individual and (ii) knew or had reason to believe that transfer would result to another transfer to an individual who

(I) would unlawfully possess the firearm or (II) would use or dispose of the firearm unlawfully. *Id.* cmt. 13(A).

According to the PSR, the CS initially told Special Agent Page that Meza contacted him/her, showed him/her the firearms, and said he planned to sell the firearms using his cell phone. After the Dallas Police Department informed Special Agent Page about Meza's arrest, Special Agent Page followed up with the CS, who then gave a detailed description of both firearms and the man to whom Meza sold them.

The district court did not abuse its discretion in considering the CS's testimony for two reasons. First, the CS's testimony was corroborated. Special Agent Page used the CS's tip to track down Guzman, Meza's co-conspirator. Guzman fit the CS's description of a Hispanic male, whose last name started with "G," and who drove a black Jeep. And Guzman confirmed that he bought the stolen Colt rifle and Glock pistol from Meza and that he did so with the intent to sell them—just as he had done with other goods Meza sold him in the past. The texts show Meza possessed the firearms before selling them to Guzman and that he used his cell phone to complete the transaction. And Meza's criminal history shows he repeatedly burglarized cars. At sentencing, the district court listed twenty-two prior offenses—twelve of which were burglaries. Together, Guzman's testimony, the texts and photos Meza sent Guzman, and Meza's criminal history constitute "sufficient corroboration" of the CS's statements. U.S.S.G. § 6A1.3, cmt. The Government does not need to show that *every* fact is corroborated. *See Gaytan*, 74 F.3d at 558; *United States v. Guerrero*, 16 F.3d 1216, 1994 WL 57697, at *1 (5th Cir. Feb. 18, 1994) (per curiam) (precedential per Fifth Circuit Rule 47.5.3). And Meza does not argue *any* of these facts taken from the PSR are "materially untrue." *Young*, 981 F.2d at 185 (citation omitted).

No. 20-10218

Second, this is not an anonymous-tip case. "Statements derived from police investigations generally bear sufficient indicia of reliability." *United States v. Oudems*, 785 F. App'x 234, 235 (5th Cir. 2019) (per curiam) (citing *United States v. Valdez*, 453 F.3d 252, 267 (5th Cir. 2006); *United States v. Vela*, 927 F.2d 197, 201 (5th Cir. 1991)). And we have recognized an important distinction between known informants and truly anonymous tipsters. *See United States v. Martinez*, 486 F.3d 855, 861–64 (5th Cir. 2007). So when an investigator speaks directly to a confidential informant whom the investigator considers reliable, it is permissible for the district court to consider the investigator's testimony regarding the informant's statements. *See United States v. Golden*, 17 F.3d 735, 736 (5th Cir. 1994). That's especially true where the defendant "personally met and dealt with" the informant as well. *Oudems*, 785 F. App'x at 235.

Here, the CS was not anonymous; he/she was an individual who had direct contact with both Meza and Special Agent Page. The CS told Special Agent Page that he/she was in close contact with Meza, having engaged in firsthand conversations with him and observed his activity. And of course, Special Agent Page knew the CS's identity and found him/her credible. The Government even offered to disclose the CS's identity to the district court, but the district court said that was unnecessary. The CS does not become anonymous simply because *Meza* now contends that he does not know him/her.

Based on that evidence, the district court found Meza trafficked firearms. That conclusion was reasonable based on the CS's testimony and the corroborating evidence. So the district court did not err by applying the firearms-trafficking enhancement.

B.

Now for the second enhancement. Section 2K2.1(b)(6)(B)—or the "felony-offense enhancement"—authorizes a four-level enhancement "[i]f the defendant used or possessed any firearm in connection with another felony offense." U.S.S.G. § 2K2.1(b)(6)(B). "Another felony offense" is one "other than the . . . firearms possession or trafficking offense, punishable by imprisonment for a term exceeding one year." *Id.* cmt. 14(C). The other felony offense at issue here is the burglary of the FBI agent's car.

The PSR reports that after the Dallas Police Department discovered that Meza had been arrested for numerous burglaries near the Eastbridge apartment complex, the CS confirmed to Special Agent Page that Meza had burglarized cars in that area. Meza rejects this testimony as unreliable too. But again, the record shows the district court's reliance was reasonable because the CS's testimony was corroborated and he/she was not anonymous.

Meza's convictions for burglaries near Eastbridge circumstantially corroborated the CS's testimony regarding the burglary of the FBI agent's car. So too did the text messages, which showed Meza possessed the firearms as early as 7:14 a.m. on the morning after the burglary. Meza claims that "Diaz established that Meza did not commit the burglary," yet he does not cite evidence to that effect. Even assuming Diaz attempted to take full responsibility for the burglary, that does not change the fact that the circumstantial evidence "sufficient[ly] corroborat[es]" the CS's statements. U.S.S.G. § 6A1.3, cmt. Meza's close connection to this crime, coupled with his criminal history of committing burglaries in the same apartment community, certainly provides the support necessary to corroborate the CS's testimony. And as explained above, the CS's connections to both Meza and Special Agent Page make him/her a non-anonymous source.

No. 20-10218

Based on that evidence, the district court found Meza participated in the burglary. That conclusion was reasonable based on the CS's testimony and the corroborating evidence. So the district court did not err by applying the felony-offense enhancement either.

## C.

Even if we were to conclude the district court erred by considering the CS's testimony and applying the enhancements, that error would be harmless. "[I]n this circuit, there are two ways to show harmless error if the wrong guidelines range is employed." *United States v. Guzman-Rendon*, 864 F.3d 409, 411 (5th Cir. 2017). The first is the *Richardson* standard, which requires a showing that "the district court considered both ranges (the one now found incorrect and the one now deemed correct) and explained that it would give the same sentence either way." *Id.* (citing *United States v. Richardson*, 676 F.3d 491, 511 (5th Cir. 2012)).[2] Under *Richardson*, the question is whether the district court would have sentenced Meza to the statutory maximum of 120 months had it rejected the enhancements. *See id.*

The sentencing transcript is clear that the answer is yes. After emphasizing the seriousness of Meza's numerous vehicle burglaries, the district court said it would give him the same sentence "[e]ven if [it] granted the objections on the burglary and on the trafficking." The district court also reiterated that, even without the enhancements, it would sentence Meza to

---

[2] The second is the *Ibarra-Luna* standard, which "requires that 'the proponent of the sentence convincingly demonstrate[] both (1) that the district court would have imposed the same sentence had it not made the error, and (2) that it would have done so for the same reasons it gave at the prior sentencing.'" *Guzman-Rendon*, 864 F.3d at 411 (alteration in original) (quoting *United States v. Ibarra-Luna*, 628 F.3d 712, 714 (5th Cir. 2010)).

No. 20-10218

120 months under the § 3553 factors. So even assuming the court considered the wrong Guidelines recommendation, the error is harmless.

### III.

Meza next argues that the Government violated *Brady v. Maryland*, 373 U.S. 83 (1963). Under that decision, the Government "must disclose to the defendant evidence that is favorable to the accused and material either to guilt or to punishment." *United States v. Weintraub*, 871 F.2d 1257, 1260 (5th Cir. 1989) (citation omitted). Meza claims the Government failed to adhere to its *Brady* obligation at sentencing, and he argues he is entitled to a new sentencing hearing after the Government discloses the CS's criminal history.

Assuming for the sake of argument that Meza retained his *Brady* right after pleading guilty,[3] Meza must establish three elements: "(1) the prosecution suppressed evidence, (2) it was favorable to the defendant, and (3) it was material." *United States v. Brown*, 650 F.3d 581, 587–88 (5th Cir. 2011). The Government does not dispute the first two elements, so we need only address materiality. The evidence would be material if there were a "substantial, not just conceivable" likelihood that the district court would have reached a different result had the evidence been disclosed. *Id.* at 588 (quoting *Harrington v. Richter*, 562 U.S. 86, 112 (2011)).

---

[3] That proposition is unclear. In the Fifth Circuit, it is well established that a defendant's guilty plea waives his *pre-plea* rights to *Brady* material. *See Alvarez v. City of Brownsville*, 904 F.3d 382, 389 (5th Cir. 2018) (en banc) ("declin[ing] the invitation to disturb its precedent concerning a defendant's constitutional right to *Brady* material prior to entering a guilty plea" and thereby reaffirming *United States v. Conroy*, 567 F.3d 174 (5th Cir. 2009) (per curiam), which held that defendants do not have pre-plea *Brady* rights). This makes sense given *Brady* is a fair-*trial* right, *see Alvarez*, 904 F.3d at 395 (Higginson, J., concurring), and a defendant who pleads guilty "forgoes not only a fair trial, but also other accompanying constitutional guarantees," *United States v. Ruiz*, 536 U.S. 622, 628 (2002) (citing *Boykin v. Alabama*, 395 U.S. 238, 243 (1969)).

Meza says he intended to use the CS's criminal history to impeach his/her credibility, so "we must consider the nature of the impeachment evidence improperly withheld and the additional evidence of the defendant's guilt independent of the disputed testimony." *Weintraub*, 871 F.2d at 1262; *see also United States v. Giglio*, 405 U.S. 150, 154 (1972) (holding that impeachment evidence falls within the *Brady* rule). In *Weintraub*, our court distinguished witness testimony that is "strongly corroborated by additional evidence supporting a guilty verdict" from testimony "on an essential issue or [for which] there is no strong corroboration." 871 F.2d at 1262 (contrasting cases). Then we concluded that "the record and transcript from Weintraub's trial belie[d] his claim that the withheld evidence was reasonably likely to change the outcome of his trial." *Id.* Rather, "the corroborating evidence of his guilt and the collateral nature of the withheld impeachment evidence compel[led] the conclusion that this evidence was not material to Weintraub's conviction." *Id.*

So too here. As explained above, the Government presented circumstantial evidence to corroborate each of the CS's statements. It's true that the district court did not say the magic word "materiality." But that does not matter. The record makes two things clear: (1) the district court knew that the CS had a criminal history, and (2) based on the seriousness of the offense and prior related offenses, it would impose the same statutory-maximum sentence regardless of the Guidelines range. And the Government is correct that "Meza does not even attempt to show that a different result would have been a substantial likelihood, and instead rests on conclusory statements that the information was important to him." *See Brown*, 650 F.3d at 588.

The evidence was immaterial to the district court's sentencing determination. Therefore, the Government did not have a *Brady* obligation to disclose the CS's criminal history.

No. 20-10218

IV.

Finally, Meza argues the statute under which he was convicted, 18 U.S.C. § 922(j), is unconstitutional on its face and as applied. As Meza concedes, both arguments are foreclosed by binding Fifth Circuit precedent. *See United States v. Hicks*, 958 F.3d 399, 402 n.1 (5th Cir. 2020) (reaffirming that § 922(g) is not unconstitutional as applied for lack of a knowledge requirement), *petition for cert. filed* (U.S. Oct. 8, 2020) (No. 20-5959); *United States v. Alcantar*, 733 F.3d 143, 146 (5th Cir. 2013) (reaffirming that § 922(g) does not violate the Commerce Clause); *see also United States v. Luna*, 165 F.3d 316, 319–22 (5th Cir. 1999) (noting § 922(g) and (j) contain "virtually identical language" regarding interstate commerce). We "may not overturn another panel's decision, absent an intervening change in the law, such as by a statutory amendment, or the Supreme Court, or our *en banc* court." *Jacobs v. Nat'l Drug Intelligence Ctr.*, 548 F.3d 375, 378 (5th Cir. 2008). So we reject Meza's constitutional arguments under our rule of orderliness.

\*   \*   \*

The judgment of the district court is AFFIRMED.