# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

July 9, 2024

Lyle W. Cayce

Clerk

No. 22-10975

UNITED STATES OF AMERICA,

*Plaintiff—Appellee*,

*versus*

BRAYLON RAY COULTER,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:19-CR-68-1

Before SOUTHWICK and DUNCAN, *Circuit Judges*, and KERNODLE, *District Judge*.[*]

PER CURIAM:[†]

Braylon Ray Coulter was convicted of being a felon in possession of a firearm. On appeal, Coulter argues the Government should have disclosed the arresting officer's personnel file so that Coulter could impeach the officer's testimony at trial. Finding no clear error, we AFFIRM.

---

[*] United States District Judge for the Eastern District of Texas, sitting by designation.

[†] This opinion is not designated for publication. *See* 5TH CIR. R. 47.5.4.

No. 22-10975

## FACTUAL AND PROCEDURAL BACKGROUND

Coulter was arrested after a July 2018 traffic stop by Officer Nino de Guzman of the Lancaster, Texas Police Department. During the stop, Coulter admitted he was on parole for aggravated robbery and he had a gun in his backpack. He was later indicted and tried for being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).[1] The district court initially granted Coulter's motion to suppress his pre-*Miranda* admission regarding the gun, but a divided panel of this court reversed. *United States v. Coulter*, 41 F.4th 451, 463 (5th Cir. 2022). We will later discuss the dispute about the evidence of such an admission.

Before trial, the Government filed several *ex parte* motions for *in camera* review of and request to seal Guzman's disciplinary records in his personnel file to ensure they were not subject to disclosure under *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny. *See Giglio v. United States*, 405 U.S. 150, 154–55 (1972) (applying *Brady* to impeachment evidence). The district court granted both motions after an *in camera* review, concluding the impeachment evidence in Guzman's personnel file was not material to this case. In granting the Government's motion *in limine* regarding one disciplinary action in the personnel file, however, the district court required the Government to summarize the circumstances of Guzman's termination from the Rockwell Police Department. The Government did so at a hearing with all parties present, and the district court determined the evidence was inadmissible as irrelevant under Federal Rule of Evidence 402 or as more prejudicial than probative under Rule 403. The district court later explained it would

---

[1] A 2022 amendment changed the applicable provision to Section 924(a)(8). *See* Bipartisan Safer Communities Act, Pub. L. No. 117-159, § 12004(c), 136 Stat. 1313, 1329 (2022). We refer to the relevant provision as it existed at the time of the 2018 offense and note that changes in the law are not at issue.

conclude the same regarding the rest of the disciplinary records, though no summary was provided.

For most of these proceedings, Coulter exercised his right to proceed *pro se*, with standby counsel to assist him. He continued to do so during trial. After approximately an hour of deliberations, the jury returned a guilty verdict. Coulter timely appealed.

## DISCUSSION

We apply clear error review to *Brady* and *Giglio* claims where, as here, the district court reviewed the potential *Brady* material *in camera*. *United States v. Brown*, 650 F.3d 581, 589 (5th Cir. 2011). Under clear error review, we must be "left with a 'definite and firm conviction' that a mistake has been committed" to reverse the district court. *Id.* (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)).

"To establish a *Brady* violation, the defendant must prove that (1) the prosecution suppressed evidence, (2) it was favorable to the defendant, and (3) it was material." *Id.* at 587–88. "Evidence is material if there is 'a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" *Id.* at 588 (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985)). "A reasonable probability of a different result is one in which the suppressed evidence undermines confidence in the outcome of the trial." *Turner v. United States*, 582 U.S. 313, 324 (2017) (quotation marks and citation omitted). Impeachment evidence is generally not material when it is either "strongly corroborated by additional evidence" or when it would not "seriously undermine the testimony of a key witness on an essential issue" of trial. *United States v. Sipe*, 388 F.3d 471, 478 (5th Cir. 2004) (citation omitted). Impeachment evidence is generally "favorable to the accused." *United States v. Weintraub*, 871 F.2d 1257,

1260 (5th Cir. 1989) (quoting *Giglio*, 405 U.S. at 154).  Our focus, then, is on the materiality of Guzman's personnel file.

Coulter's brief here, filed by counsel, argues the personnel file should have been disclosed so that Coulter could impeach Guzman's testimony that Coulter admitted he had a gun in his backpack.  He asserts Guzman's testimony was the sole evidence that Coulter "knowingly" possessed the firearm because, according to Coulter, the audio of the dash-cam recording of the putative admission was indecipherable.  18 U.S.C. § 924(a)(2) (2018).  Coulter therefore should have been able to use evidence from Guzman's personnel file to impeach his character for truthfulness.  *See* Fed. R. Evid. 608(b).

If the dash-cam footage the jurors heard was clear evidence of Coulter's admission to the presence of a gun in his backpack, then the answer to whether impeaching Guzman for truthfulness could create reasonable doubt as to his testimony is an easy "no."  Although some audio portions of the video are unintelligible, this court was able to understand the admission.  Guzman asked Coulter "where is the gun at?" Coulter can be understood responding, "it's in my backpack."  Then Guzman can be heard confirming "in your backpack?"

We acknowledge, though, our own difficulty in understanding the audio.  That problem could mean one or more jurors were left with doubts about the recorded statement.  The jury, of course, was entitled to consider this recording and Guzman's testimony.  *See United States v. Stone*, 960 F.2d 426, 436 (5th Cir. 1992).  Moreover, the district court explained that Coulter could cross-examine Guzman about what he testified he heard, but Coulter did not do so.  Instead, Coulter questioned Guzman about, among other matters, any history of racial profiling, if traffic quotas were required, and if the circumstances surrounding the traffic stop were coercive.

Further, the recording of the traffic stop and Guzman's testimony were not the only evidence given to the jury on whether Coulter knowingly possessed the firearm.  Coulter called his former boss, Niklaus Kiernan, to testify regarding ownership of the gun.  The Government elicited an admission from Kiernan that he had falsely told a federal agent that he had put the gun in the van.  Kiernan testified that he did so because Coulter implicitly threatened to disclose unfavorable information if Kiernan did not take responsibility for the gun.  Kiernan also testified that he kept the gun in a locked cabinet in his office, Coulter had access to the gun, and he did not know when the gun was taken and placed in the van.

To remind, the clear error we must find in the district court's denial of access to Guzman's personnel file would require that we be "left with a 'definite and firm conviction' that a mistake has been committed."  *Brown*, 650 F.3d 581 at 589 (quoting *U.S. Gypsum Co.*, 333 U.S. at 395).  The corroborating testimony, when viewed with the dash-cam video, makes us conclude there was no clear error.

AFFIRMED.  All pending motions are DENIED.